IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

JUDY LITTLE,

    Plaintiff,

v.                                   CIVIL ACTION NO. 1:17-03931

CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is about whether Verizon's Customer Agreement, which contains an arbitration clause, binds the defendant, Judy Little, and requires the court to submit this action to arbitration. For the reasons that follow, the defendant's Motion to Compel Arbitration and Stay Proceeding pursuant to the Federal Arbitration Act (ECF No. 5) is hereby **GRANTED** and plaintiff's action is **DISMISSED** without prejudice.

### I.    BACKGROUND

Judy Little purchased a mobile hotspot device on October 21, 2015, at a Verizon Wireless retail location in Princeton, West Virginia. See ECF No. 5-1, ¶ 4. Before activation, Verizon required Little to sign a standardized electronic sales receipt agreeing to the terms and conditions of Verizon Wireless' Customer Agreement. See ECF No. 5-1, Ex. A ("Verizon

Sales Receipt"). The electronically signed sales receipt stated in pertinent part:

> I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT . . . INCLUDING THE TERMS AND CONDITIONS OF MY PLAN . . . <u>I UNDERSTAND THAT I AM AGREEING TO . . . SETTLEMENT OF DISPUTES BY ARBITRATION INSTEAD OF JURY TRIALS</u> . . . I AM AWARE THAT I CAN VIEW THE CUSTOMER AGREEMENT ANYTIME AT VERIZONWIRELESS.COM OR IN MY VERIZON ACCOUNT.

See id. at 3 (emphasis added). The sales receipt states "JUDY LITTLE" as the "Account Owner Name" and includes a signature. See id. While Little's signature does not appear to be a full signature, see id., plaintiff does not claim that she did not sign the sales receipt. The Customer Agreement referenced in the sales receipt is a 10-page document that includes an arbitration provision within a section titled "HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS?" See ECF No. 5-1, Ex. B, at 7-9 ("Verizon Customer Agreement"). This section expounds upon the arbitration clause announced in the sales receipt. Id.

Little used the wireless hotspot for "less than two weeks," but the device "failed to work properly." See ECF No. 7-1, Ex. A, ¶¶ 9. As a result, she returned the device but Verizon continued to charge her. See id. at Ex. A, ¶¶ 9-11. Later, Verizon allegedly contacted Little in an attempt to collect the outstanding balance owing. See Amended Complaint at ¶¶ 3, 7-33. These telephone calls form the basis of Little's allegation that

2

Verizon engaged in violations of federal and state debt collection laws. Id. at ¶ 3.

## II. APPLICABLE LAW

**A. Standard of Review**

Motions to compel arbitration "'exist in the netherworld between a motion to dismiss and a motion for summary judgment.'" U.S. ex rel. TBI Investments, Inc. v. BrooAlexa, LLC, 119 F. Supp. 3d 512, 523 (S.D.W. Va. 2015) (quoting Shaffer v. ACS Government Servs., Inc., 321 F. Supp. 2d 682, 683 (D. Md. 2004)). The defendant, as the party seeking to enforce the arbitration agreement, bears the initial burden of "persuading this court that the parties entered into an enforceable arbitration agreement." Drake v. Mallard Creek Polymers, Inc., 2014 WL 7405762, at *1 (W.D.N.C. Dec. 30, 2014). If the defendant succeeds, then "the burden shifts to the plaintiff to show that even though there was some written contract, [she] did not actually agree to it--because the signature was forged, the terms of the contract were misrepresented, or some other reason evincing lack of true agreement." Czopek v. TBC Retail Grp., Inc., 2014 WL 5782794, at *4 (M.D. Fla. Nov. 6, 2014); see also BrooAlexa, LLC, 119 F. Supp. 3d 512, 524 (applying summary judgment standard to a motion to compel arbitration and stating that "[o]nce the moving party has met its burden, the burden

shifts to the nonmoving party to demonstrate that a genuine issue of material fact exists for trial.").

**B. Federal Arbitration Act**

The Federal Arbitration Act ("FAA") embodies "a liberal federal policy favoring arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations and quotations omitted) and provides in pertinent part:

> A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. If the parties execute a valid agreement to arbitrate disputes, federal courts are required to compel arbitration. Sydnor v. Conseco Financial Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001); see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 23–24 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

A party can compel arbitration under the FAA if it establishes: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration

provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute." Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991) (cited by Thomas v. Progressive Leasing, No. CV RDB-17-1249, 2017 WL 4805235, at *2 (D. Md. Oct. 25, 2017)).

"When deciding whether the parties agreed to arbitrate a certain matter, courts generally [ . . . ] should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also Heller v. TriEnergy, Inc., 877 F. Supp. 2d 414, 423-24 (N.D.W. Va. 2012) (explaining that the "one important caveat to the reach of the FAA" is that state law governs the formation of the contract). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. See Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (citations omitted). If, however, there is doubt or ambiguity "concerning the scope of arbitrable issues," the doubt or ambiguity "should be resolved in favor of arbitration." Id.

## III. Discussion

**A.   The Arbitration Agreement is Valid and Enforceable**

Little alleges that she never agreed to arbitrate any dispute with Verizon and that defendant has failed to meet its burden of demonstrating she entered into an enforceable arbitration agreement.  See Plaintiff's Response in Opposition (ECF No. 7).  Accordingly, the first, third, and fourth factors in Whiteside v. Teltech Corp. are not in dispute.[1]  Plaintiff narrows the court's inquiry further by conceding that the arbitration provision "purport[s] to cover the dispute."  See ECF No. 7, at 1.  Thus, the court's inquiry hinges on whether a valid written arbitration agreement exists.  Whiteside v. Teltech Corp., 940 F.2d at 102.  As stated above, state law governs the matter of whether a valid and enforceable agreement to arbitrate exists.  First Options of Chicago, 514 U.S. at 944.  The parties do not dispute that West Virginia law governs whether a valid contract exists.

Plaintiff hangs her hat on State ex rel. U-Haul Co. of W. Virginia v. Zakaib, wherein the West Virginia Supreme Court of

---

[1]  Even if plaintiff did contend these factors were at issue, plaintiff's arguments would fail.  As to the first factor, the Amended Complaint illustrates a dispute between the parties.  Regarding the third factor, internet services are instrumentalities of interstate commerce.  See, e.g., PSINet, Inc. v. Chapman, 362 F.3d 227, 239 (4th Cir. 2004).  As to the fourth factor, Little has refused to submit to arbitration.

6

Appeals held that "a general reference in one writing to another document is not sufficient to incorporate that other document into a final agreement."  752 S.E.2d 586, 589 (W. Va. 2013), cert. denied sub nom., -- U.S. --, 135 S.Ct. 59 (2014) ("UHaul").  In U-Haul, prospective customers were required to sign a Rental Contract either in paper or electronic form that essentially stated: "I acknowledge that I have received and agree to the terms and conditions of this Rental Contract and the Rental Contract Addendum."  Id. at 590 (emphasis added). Nevertheless, this Rental Contact Addendum was only provided to customers after the Rental Contract was signed (if ever).  Id. at 591.  Therefore, customers agreed to the provisions of the Rental Contract Addendum, which included the only reference to the arbitration provision, without actually being able to read the Addendum until after their acceptance.  Id.

Nevertheless, U-Haul argued that since the Addendum was incorporated by reference in the Rental Contract, plaintiffs' acceptance of the Rental Contract resulted in their acceptance of the Addendum as well.  Id. at 590.  The court disagreed, stating a "general reference is not enough," rather:

> (1) the writing must make a clear reference to the other document so that the parties' assent to the reference is unmistakable; (2) the writing must describe the other document in such terms that its identity may be ascertained beyond doubt; and (3) it must be certain that the parties to the agreement had knowledge of and assented to the

7

incorporated document so that the incorporation will
not result in surprise or hardship.

See Syl. Pt. 2, id. (cited by Covol Fuels No. 4, LLC v. Pinnacle Min. Co., LLC, 785 F.3d 104, 114 (4th Cir. 2015)). In striking down U-Haul's arbitration provision, the court stated, "Finally, and most troubling to this Court, is the fact that U-Haul's practice was to provide customers a copy of the Addendum only after the Rental Agreement had been executed." Id. at 598 (emphasis in original). Accordingly, "[a]n oblique reference to a separate, non-contemporaneous document is insufficient to incorporate the document into the parties' final contract." Id. (cited by SWN Prod. Co., LLC v. Edge, No. 5:15CV108, 2015 WL 5786739, at *5 (N.D.W. Va. Sept. 30, 2015).

U-Haul is distinguished from this matter because the executed sales receipt that Little signed[2] explicitly contains an

---

[2] Plaintiff argues in her Response and Surreply that the affidavit offered by Meryl Friedman, a senior paralegal employed by Verizon is inadmissible. See ECF No. 5-1. Ms. Friedman's affidavit attaches and gives context to the the Verizon Sales Receipt (which includes Little's alleged signature) and the Verizon Customer Agreement. Id. Moreover, the affidavit is rooted in Ms. Friedman's "personal knowledge or on information that [she] acquired from business records made and maintained in the usual course of business." Id. at ¶ 2. As such, the affidavit is admissible under the business records exception embodied in Federal Rule of Evidence 803(6), which assumes "[r]eports and documents prepared in the ordinary course of business are generally presumed to be reliable and trustworthy." Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 204–05 (4th Cir. 2000).

8

arbitration clause provision. See ECF No. 5-1. The fact that there is an additional Customer Agreement that details the arbitration agreement to which Little submitted is not material.

Furthermore, the Verizon sales receipt "make[s] a clear reference to the [Customer Agreement] so that the parties' assent to the reference is unmistakable." Syl. Pt. 2, id. Little electronically signed below a statement contained within the sales receipt that clearly indicated that the customer is consenting to not only arbitration but the Customer Agreement. See id.; see also Verizon Customer Agreement ("I UNDERSTAND THAT I AM AGREEING TO . . . SETTLEMENT OF DISPUTES BY ARBITRATION INSTEAD OF JURY TRIALS . . ."). Second, this express reference to the arbitration provision further "describe[s] the [Customer Agreement] in such terms that its identity may be ascertained beyond doubt." Syl. Pt. 2, U-Haul.

Plaintiff alleges that she never read or had knowledge of the Customer Agreement, resulting in her "surprise and hardship." See Plaintiff Response in Opposition, at 6-7 (ECF No. 7). Nevertheless, the Sales Receipt not only provided notice of the Customer Agreement but also gave independent notice of the arbitration clause, further detailed in the Customer Agreement. Id. at 598; Lousararian v. Royal Caribbean

Corp., 951 F.2d 7, 11 (1st Cir. 1991) (notice of terms of a contract depend not on "actual knowledge of the terms in the contract but focuses instead on the opportunity for such knowledge.") (emphasis in original).

Little also misreads U-Haul as requiring Verizon to provide her with a physical copy of the Customer Agreement, which she never received.[3] Id. at 598 ("Finally, and most troubling to this Court, is the fact that U-Haul's practice was to provide customers a copy of the Addendum only after the Rental Agreement had been executed.") (emphasis added). But U-Haul does not stand for the proposition that a physical copy of an incorporated document needs to be received by a customer. Instead, the Verizon Sales Receipt had to give Little "the requisite knowledge of the contents" of the incorporated document, creating mutual assent between the parties. Id. In U-Haul, the company essentially baited and switched consumers into consenting to arbitration and other terms and conditions without knowledge. Id. Here, Verizon gave Little notice of the arbitration agreement before she signed the sales receipt by

---

[3] Verizon does not dispute that it did not give a physical copy of the Customer Agreement to Little because it is its policy to provide access to the Customer Agreement online. See Verizon Sales Receipt ("I AM AWARE THAT I CAN VIEW THE CUSTOMER AGREEMENT ANYTIME AT VERIZONWIRELESS.COM OR IN MY VERIZON ACCOUNT.")

announcing that an arbitration clause existed within the sales receipt.  See Verizon Sales Receipt.

Plaintiff lodges two additional objections.  First, plaintiff alleges that the signature on the sales receipt is not hers, instead resembling a "pixelated loop" created by a computer.  See ECF No. 7, at 5-6.  Plaintiff does not allege she did not sign the Verizon contract, nor that the signature was procured by fraud, coercion or inducement.  Id.  Rather, even if the signature is not a realistic model of Little's signature, it makes no legal difference.  See Grant-Fletcher v. Collecto, Inc., No. CIV.A. RDB-13-3505, 2014 WL 1877410, at *6 (D. Md. May 9, 2014) ("[P]laintiff's contention that the electronic signature on the Wireless Service Agreement does not resemble hers . . . is insufficient to show that she did not assent to the terms of a contract.").

Second, Little alleges that if she had known that she was signing an arbitration agreement, she would not have executed the contract.  Such an argument attempts to undercut the foundation of contract law.  "The fact that [Little] may have chosen not to access or read the language of the Arbitration Agreement does not render it invalid or non-binding."  Id. at *7; Am. States Ins. Co. v. Surbaugh, 745 S.E.2d 179, 190 (W. Va. 2013) (internal citations and quotations omitted) ("The law of [West Virginia] is clear in holding that a party to a contract

11

has a duty to read the instrument."); see also Dieng v. College Park Hyundai, No. DKC-09-0068, 2009 WL 2096076, at *5 (D. Md. July 9, 2009) (holding that plaintiffs were bound to an agreement they "did not have or take the time to read and understand").

With the broad federal principle in favor of arbitration in mind, see AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011). Verizon's motion to compel arbitration is granted.

**B. Plaintiff Also Waived the Right to Bring a Class Action.**

The Customer Agreement also contains a waiver of the right to bring a class action suit. See Verizon Customer Agreement, at 8. Because the Customer Agreement is valid, binding on the plaintiff, and enforceable by the defendant, arbitration may proceed only on an individual, not class, basis.

**C. Plaintiff's Action is Dismissed.**

Although defendant has moved only to stay proceedings in this matter, see ECF No. 5, the Fourth Circuit has "acknowledged that dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 376 (4th Cir. 2012) (internal citations and quotations omitted); Taylor v. Santander Consumer USA, Inc., No. CIV.A. DKC 15-0442, 2015 WL 5178018, at *7 (D. Md. Sept. 3, 2015) ("district courts in the Fourth Circuit have recognized that dismissal, rather than a stay . . . pending arbitration, is

12

appropriate where [, as here,] a court rules that all of a plaintiff's claims must be arbitrated.")

Since all of plaintiff's claims are subject to arbitration, "no useful purpose will be served by staying the pertinent proceedings pending arbitration." <u>Crawl v. Experian Info. Sols., Inc.</u>, No. CV PJM 15-97, 2016 WL 8716597, at *7 (D. Md. Jan. 29, 2016) (citations and quotations omitted).

### IV. CONCLUSION

This Court finds that defendant's Motion to Compel Arbitration and Stay Proceeding pursuant to the Federal Arbitration Act should be, and hereby is, **GRANTED.** Accordingly, the Complaint is **DISMISSED without prejudice.**

The Clerk is directed to send copies of this Order to all counsel of record.

**It is SO ORDERED** this 19th day of January, 2018.

ENTER:

*David A. Faber*
David A. Faber
Senior United States District Judge

13